# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
September 11, 2020

Lyle W. Cayce
Clerk

No. 19-40668

United States of America,

*Plaintiff—Appellee*,

*versus*

Alfredo Avalos-Sanchez, *also known as* Chore, *also known as* Jose,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 7:17-CR-588

Before Davis, Jones, and Willett, *Circuit Judges*.

Don R. Willett, *Circuit Judge*:

Alfredo Avalos-Sanchez served as lookout during an armed home invasion gone awry. The plan was to steal drugs and money from a known drug dealer. But Avalos-Sanchez and his crew invaded the wrong house. Instead of hightailing it, as some might have done,[1] they robbed the four non-

---

[1] *See* Jenna Laine, *Bad House Call: Buccaneers' Tom Brady Mistakenly Enters Wrong Home*, ESPN (Apr. 23, 2020), https://www.espn.com/nfl/story/_/id/29086979/buccan

No. 19-40668

drug-dealing occupants anyway. Avalos-Sanchez pleaded guilty to, and was convicted of, interference with interstate commerce by robbery, in violation of the Hobbs Act, 18 U.S.C. § 1951(a). The district court sentenced Avalos-Sanchez to 87 months in prison.

Avalos-Sanchez challenges his guilty-plea conviction and sentence on two grounds: (1) that the factual basis for his guilty plea was insufficient, in violation of Federal Rule of Criminal Procedure 11, because the Government failed to establish the commerce element of the Hobbs Act robbery charge; and (2) that his guilty plea was not knowing and voluntary, in violation of the Due Process Clause of the Fifth Amendment, because he did not know the factual basis for his guilty plea was insufficient. Neither argument has merit, and we affirm.

I

In June 2017, Avalos-Sanchez and several others attempted to rob a McAllen, Texas residence. Avalos-Sanchez and his crew "believed that hundreds of pounds of marijuana and/or over five kilograms of cocaine were being stored at the private residence," and they intended to obtain by force, and then distribute, those controlled substances. The plan was straightforward: Some of the crew would enter the home to steal the controlled substances at gunpoint, while Avalos-Sanchez and others would watch for law enforcement. But the June 6 robbery went sideways; the crew had hit the wrong house. Instead of fleeing, the robbers held the four occupants at gunpoint and stole $700 cash and two cell phones.

---

eers-tom-brady-mistakenly-enters-wrong-home ("Brady immediately apologized before darting out the door.").

No. 19-40668

The next day, some of the crew—not including Avalos-Sanchez—ran the same play and tried to rob the correct residence. The crew never made it to the front door. They encountered law enforcement on their way.

A grand jury issued a four-count indictment against Avalos-Sanchez and several other defendants involved in the June 6 robbery and the June 7 attempted robbery. Count Three of the indictment charged Avalos-Sanchez with violating the Hobbs Act:

> On or about April 24, 2017 through June 7, 2017, . . . [Avalos-Sanchez] did unlawfully obstruct, delay, and affect commerce and the movement of articles and commodities in commerce by robbery and attempt to obstruct, delay, and affect commerce and the movement of articles and commodities in commerce by robbery, as the terms robbery and commerce are defined in Title 18, United States Code, Section 1951(b), in that the defendants did unlawfully take and attempted to take controlled substances and drug proceeds from individuals against their will by means of actual or threatened force, violence, or fear of immediate or future injury.[2]

Avalos-Sanchez pleaded guilty to Count Three and entered a written plea agreement with the Government. At his re-arraignment, Avalos-Sanchez admitted that he had conspired with other defendants with the intent to steal and sell controlled substances. Avalos-Sanchez also admitted that he was involved in the June 6 robbery and that, even though no drugs were stolen, the intent had been to enter the residence and steal drugs believed to be there. Avalos-Sanchez admitted that he and his crew believed that hundreds of pounds of marijuana or five-plus kilograms of cocaine were stored at the targeted residence. Avalos-Sanchez denied that he attended or knew the plan for the June 7 attempted robbery. But he did not refute the

---

[2] Avalos-Sanchez was charged with violating 18 U.S.C. § 1951(a) and 18 U.S.C. § 2.

No. 19-40668

Government's statement that a June 7 telephone call among many of the crew alerted Avalos-Sanchez and others to the planned robbery that day.

The district court sentenced Avalos-Sanchez to 87 months in prison. Avalos-Sanchez timely appealed, challenging his guilty-plea conviction and sentence.[3]

## II

Because Avalos-Sanchez did not challenge the adequacy of the factual basis for his guilty plea in district court, we review for plain error.[4] And the plain-error bar, while not insurmountable, is high. Avalos-Sanchez must show "(1) there is an error, (2) that is clear and obvious, and (3) that affects his substantial rights."[5] Even when all three requirements are met, we have discretion to correct the error and will do so only if "the error seriously affects the fairness, integrity, or public reputation of judicial proceedings."[6]

## III

Avalos-Sanchez raises two issues on appeal. First, he contends that the factual basis supporting his guilty plea is insufficient as a matter of law because it does not establish an effect on interstate commerce, an element of a Hobbs Act robbery. Second, he argues that his guilty plea was not voluntary and knowing because he did not know that the factual basis for his guilty plea was insufficient. We address, and reject, each in turn.

---

[3] We have jurisdiction for this appeal. *See* 28 U.S.C. § 1291; 18 U.S.C. § 3742(a).

[4] *United States v. Walker*, 828 F.3d 352, 354 (5th Cir. 2016); *United States v. Marek*, 238 F.3d 310, 315 (5th Cir. 2001) (en banc) (citations omitted).

[5] *Marek*, 238 F.3d at 315 (citation omitted).

[6] *Id.*

No. 19-40668

A

Before accepting a guilty plea, a district court must first determine there is a factual basis for the plea.[7] This factual basis must be in the record and "sufficiently specific."[8] To analyze the sufficiency of the factual basis under plain-error review, we must first determine if the district court erred in accepting Avalos-Sanchez's guilty plea. To do so, we compare the elements of the crime for which Avalos-Sanchez was convicted to the conduct he admitted in the factual basis.[9]

First, we consider the elements of the crime. A Hobbs Act violation[10] has two elements: (1) robbery, extortion, or an attempt or conspiracy to rob or extort (2) that affects commerce.[11] Avalos-Sanchez only challenges the commerce element.[12] The Hobbs Act's language is "unmistakably broad," however, and the scope of its commerce element is no exception: The Act "reaches any obstruction, delay, or other effect on commerce, even if small,"

---

[7] FED. R. CRIM. P. 11(b)(3) ("Before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea.").

[8] *United States v. Broussard*, 669 F.3d 537, 546 (5th Cir. 2012) (internal quotation marks and citation omitted).

[9] *Marek*, 238 F.3d at 315.

[10] 18 U.S.C. § 1951(a).

[11] *United States v. Robinson*, 119 F.3d 1205, 1212 (5th Cir. 1997).

[12] Avalos-Sanchez was charged with, and pleaded guilty to, committing or attempting to commit a robbery, but his counsel states, "It is noteworthy that Mr. Avalos was not charged with and did not plead guilty to any conspiracy crime." Of note, the Government also seems to suggest that Avalos-Sanchez was convicted for aiding and abetting a Hobbs Act robbery. But because Avalos-Sanchez does not challenge his conviction and sentence based on the first element of a Hobbs Act violation, we need not address that issue.

No. 19-40668

and defines "commerce" to its constitutional limit.[13] For the Government to satisfy the Act's commerce element, then, "it is enough that a defendant knowingly stole or attempted to steal drugs or drug proceeds."[14]

Next, we consider the conduct Avalos-Sanchez admitted in the factual basis. At the re-arraignment hearing, the Government orally presented the factual basis for Avalos-Sanchez's guilty plea. Avalos-Sanchez admitted he knew of the unlawful purpose of the conspiracy to rob the home for controlled substances and joined in it willingly. He also admitted involvement in the June 6 robbery. And, importantly, he admitted that he intended to steal drugs—the hundreds of pounds of marijuana or five-plus kilograms of cocaine believed to have been there. Based on Avalos-Sanchez's admissions, the Government satisfied the Hobbs Act's commerce element, and there was a sufficient factual basis to accept Avalos-Sanchez's guilty plea.

Avalos-Sanchez and the Government debate the scope of the record that we may review when determining the factual-basis sufficiency of his guilty plea. Avalos-Sanchez argues that it should be limited to the facts admitted by him during his re-arraignment because the district court did not reference other sources when determining whether there was a sufficient factual basis for his guilty plea. The Government counters that, in addition to the re-arraignment hearing, we may also review the plea agreement, Pre-Sentence Report, indictment, and reasonably drawn inferences from the facts.[15] The Government gets it right: When we examine factual-basis

---

[13] *Taylor v. United States*, 136 S. Ct. 2074, 2079 (2016). *See* 28 U.S.C. § 1951(b)(3) (defining commerce as "all . . . commerce over which the United States has jurisdiction").

[14] *Taylor*, 136 S. Ct. at 2081.

[15] The Government cites incidents that took place before the April 24–June 7, 2017 timeframe for which Avalos-Sanchez was indicted. In addition to the June 6 and 7 incidents, the PSR references a March 12, 2017 carjacking committed with the purpose of stealing controlled substances (Avalos-Sanchez was the lookout) and an April 6, 2017 double

sufficiency under plain-error review, "we may look beyond those facts admitted by the defendant during the plea colloquy and scan the entire record for facts supporting his conviction."[16] What the district court relied on in accepting Avalos-Sanchez's guilty plea is relevant but does not limit the scope of our plain-error review. The entire record unmistakably demonstrates that Avalos-Sanchez participated in the June 6 robbery with the intent to obtain controlled substances.

But our determination of factual-basis sufficiency need not comb the entire record. Avalos-Sanchez's admissions at re-arraignment, standing alone, support his conviction under the Hobbs Act in light of the Supreme Court's decision in *Taylor v. United States*. There, the defendant was charged with two Hobbs Act violations for robbing drug dealers' homes, although neither drugs nor proceeds from drug sales were stolen.[17] Even though the defendant procured no drugs or drug money, the Supreme Court held that the prosecution met its burden by introducing evidence that Taylor's gang intentionally targeted drug dealers to obtain drugs and drug proceeds.[18] When "robberies were committed with the *express intent* to obtain illegal

---

carjacking where Avalos-Sanchez and others robbed two individuals and stole 14 kilograms of cocaine.

[16] *Broussard*, 669 F.3d at 546 (quoting *United States v. Trejo*, 610 F.3d 308, 313 (5th Cir. 2010)).

[17] In the first attempted drug robbery, Taylor failed to locate drugs at the drug dealer's home but took jewelry, $40 cash, two cell phones, and a marijuana cigarette. *Taylor*, 136 S. Ct. at 2078. In the second attempt, he broke into another drug dealer's home but did not find any drugs, taking instead a cell phone. *Id.*

[18] The Government introduced evidence that one intended robbery victim had been robbed of drugs at his home in the past and the second was believed to possess marijuana. *Id.* at 2081. And the robbers made explicit statements in the course of the robberies revealing they believed the intended victims possessed drugs and drug proceeds. *Id.*

drugs and the proceeds from the sale of illegal drugs," this "is sufficient to meet the commerce element of the Hobbs Act."[19]

Like the defendant in *Taylor*, Avalos-Sanchez did not obtain drugs or drug proceeds from the June 6 home robbery. More importantly, like the defendant in *Taylor*, Avalos-Sanchez expressly *intended* to obtain illegal drugs and proceeds from drugs from the June 6 robbery. For purposes of the Hobbs Act's commerce element, it does not matter whether Avalos-Sanchez's robbery in fact affected interstate commerce.[20] The prosecution need only show that Avalos-Sanchez committed a robbery with the intent to obtain controlled substances, which it did when Avalos-Sanchez admitted exactly that in his re-arraignment hearing.

Avalos-Sanchez argues that *Taylor* is distinguishable because there is no evidence that the actual June 6 robbery victims, as opposed to the intended victims, were drug dealers or that any drugs or drug proceeds were stolen. But the evidence is uncontroverted that Avalos-Sanchez intended to target the home of a drug dealer—where he and his crew believed they would find hundreds of pounds of marijuana or five-plus kilograms of cocaine. Avalos-Sanchez and his crew simply hit the wrong house. *Targeting* the home of a drug dealer, not actually *invading* the home of a drug dealer, is what matters under *Taylor*.

Avalos-Sanchez also contends that *Taylor* is distinguishable because he pleaded guilty to an actual robbery, not an attempted robbery. But, as the *Taylor* Court noted, "to satisfy the Act's commerce element, it is enough

---

[19] *Id.* at 2081–82 (emphasis added).

[20] In dissent in *Taylor*, Justice Thomas would construe the Hobbs Act so that "the Act punishes a robbery only when the Government proves that the robbery itself affects interstate commerce." *Taylor*, 136 S. Ct. at 2082 (Thomas, J., dissenting).

No. 19-40668

that a defendant knowingly stole or attempted to steal drugs or drug proceeds."[21] The defendant in *Taylor* was convicted for Hobbs Act robberies, and it was his knowing, albeit unsuccessful, attempt to steal drugs that satisfied the Hobbs Act's commerce element. Because Avalos-Sanchez had the requisite intent to steal controlled substances during the June 6 robbery, the Government satisfied the commerce element of the Hobbs Act, and the district court had a sufficient factual basis for accepting his guilty plea.

Avalos-Sanchez also argues that his involvement in the June 6 robbery fails to satisfy the Hobbs Act's commerce element because the actual victims of the robbery—individuals not involved in the drug trade—were not in a business engaged in or affecting interstate commerce. He relies on our decisions in *United States v. Collins*[22] and *United States v. Johnson*[23] for the argument that, when individuals rather than businesses are the victims of Hobbs Act robberies, courts are more reluctant to find that the Government has satisfied the commerce element.[24] But his reliance is misplaced: Neither case involved Hobbs Act robberies (or attempted robberies) of drugs.[25] Plus,

---

[21] *Id.* at 2081. *See also United States v. Milsten*, 814 F. App'x 244, 246 (9th Cir. 2020) (unpublished) ("Whether [defendant] was charged with an attempted crime or not," defendant's "attempt to rob a drug dealer satisfies the 'affecting commerce' element of the Hobbs Act.") (citing *Taylor*, 136 S. Ct. at 2078).

[22] 40 F.3d 95 (5th Cir. 1994).

[23] 194 F.3d 657 (5th Cir. 1999).

[24] Avalos-Sanchez also relies on Second Circuit caselaw concluding that, in cases involving individual victims, the commerce element of a Hobbs Act robbery is met only under limited circumstances. *See United States v. Rose*, 891 F.3d 82, 86 (2d Cir. 2018). But these circumstances do not apply to this case; moreover, we are not bound by the caselaw of our sister circuits.

[25] In *Collins*, the defendant was charged under 18 U.S.C. § 1951(a) and 18 U.S.C. § 924(c)(1) for robbing a Denny's restaurant employee at gunpoint, robbing another individual at gunpoint, and absconding with cash, jewelry, clothes, and that individual's

No. 19-40668

the Supreme Court's decision in *Taylor* forecloses Avalos-Sanchez's arguments. While no drugs were stolen in the June 6 robbery—just cash and cell phones—Avalos-Sanchez's *intent* to target a drug dealer's home to steal drugs, not his success, matters for purposes of satisfying the Hobbs Act's commerce element.[26]

Because the district court had a sufficient factual basis for accepting the guilty plea, the district court committed no error, plain or otherwise, and we affirm.[27]

B

Avalos-Sanchez next challenges the validity of his guilty plea. This too we review for plain error since Avalos-Sanchez failed to raise this issue in the district court.[28]

"Because a guilty plea involves the waiver of constitutional rights, it must be voluntary, knowing, and intelligent" to be valid.[29] To enter a valid guilty plea, the "defendant must have full knowledge of what the plea connoted and of its consequences."[30] Avalos-Sanchez argues that his guilty plea was not valid because, had he known of the alleged factual-basis

---

Mercedes-Benz. 40 F.3d at 98. In *Johnson*, the defendant was charged under a different statute entirely, 18 U.S.C. § 844(i). 194 F.3d at 658.

[26] *Taylor*, 136 S. Ct. at 2081–82.

[27] Even assuming that there was error, Avalos-Sanchez has failed to show that the other requirements for plain error are present. "It goes without saying that meeting all [plain-error] requirements is difficult as it should be." *Trejo*, 610 F.3d at 319 (internal quotation marks and citation omitted).

[28] *United States v. Vonn*, 535 U.S. 55, 59 (2002).

[29] *United States v. Lord*, 915 F.3d 1009, 1016 (5th Cir. 2019) (citing *Brady v. United States*, 397 U.S. 742, 748 (1970)).

[30] *Id.* (citing *Boykin v. Alabama*, 395 U.S. 238, 244 (1969)).

No. 19-40668

insufficiency regarding the Hobbs Act's commerce element, he would not have pleaded guilty.

Avalos-Sanchez predicates the *validity* of his guilty plea on his first challenge: the *basis* for his guilty plea. But as discussed above, there is no question that there was a sufficient factual basis for the commerce element. And the colloquy between the court and Avalos-Sanchez at his re-arraignment shows that Avalos-Sanchez had full knowledge of what his guilty plea connoted and of its consequences: The district court explained the maximum punishment, the elements of the Hobbs Act charge, the evidence proving a violation of the Hobbs Act, Avalos-Sanchez's trial rights, and the consequences of a guilty plea. And the district court questioned Avalos-Sanchez as to each of these. Here too, there is no error, much less plain error.

\*        \*        \*

For all these reasons, we AFFIRM.