United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

No. 21-5148

September Term, 2022

FILED ON: MARCH 21, 2023

RICA GATORE, ET AL.,
                    APPELLANTS

v.

UNITED STATES DEPARTMENT OF HOMELAND SECURITY,
                    APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:15-cv-00459)

Before: MILLETT, PILLARD and RAO, *Circuit Judges*

**J U D G M E N T**

This case was considered on the record from the United States District Court for the District of Columbia and on the briefs and oral arguments of the parties. The court has afforded the issues full consideration and determined they do not warrant a published opinion. *See* D.C. Cir. R. 36(d). For the reasons stated below, it is hereby

**ORDERED AND ADJUDGED** that the judgment of the district court be **AFFIRMED.**

When an individual applies for asylum, an asylum officer of the United States Citizenship and Immigration Services (USCIS) reviews the application and interviews the applicant. If the asylum officer recommends denying the application and concludes that the applicant is in the United States illegally, the officer prepares a document called an Assessment to Refer, which the officer forwards to a supervisor who determines whether to grant asylum or to direct the case to Immigration Court for removal proceedings. *See, e.g.*, *Abtew v. U.S. Dep't of Homeland Sec.* (*Abtew II*), 808 F.3d 895, 898 (D.C. Cir. 2015); *Abtew v. U.S. Dep't of Homeland Sec.* (*Abtew I*), 47 F. Supp. 3d 98, 101-02 (D.D.C. 2014), *aff'd*, 808 F.3d 895 (D.C. Cir. 2015). An Assessment to Refer typically includes a factual narrative, the asylum officer's impressions of the applicant's credibility and consistency, and a recommendation whether to grant asylum. *See Abtew II*, 808 F.3d at 898. Facts recited in an Assessment may include the applicant's biographical details, the

applicant's stated reasons for seeking asylum, and other factual statements the asylum applicant made to the asylum officer. Eggleston Decl. ¶ 29 (J.A. 1537).

The Freedom of Information Act (FOIA) requires federal agencies to disclose their records upon request unless the records sought fall within an enumerated exemption. 5 U.S.C. § 552(a)-(b); *see Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 7 (2001). As relevant here, FOIA Exemption 5 shields from disclosure "inter-agency or intra-agency memorandums or letters" covered by the "deliberative process privilege." 5 U.S.C. § 552(b)(5). Even when a record implicates Exemption 5, the agency must release "[a]ny reasonably segregable portion of [the] record" disclosure of which would not reveal agency deliberations, *id.* § 552(b), unless such portions are "inextricably intertwined with exempt portions," *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).

\* \* \*

With the assistance of the nonprofit organization Catholic Charities, Rica Gatore, a native and citizen of Burundi, filed a FOIA request with the Department of Homeland Security (Department or DHS) in 2014, seeking the Assessment to Refer associated with her asylum application. The Department at that time was refusing to release any portion of Assessments to Refer, generating multiple lawsuits and years of litigation over whether the Assessments contain any reasonably segregable portions. *See, e.g.*, *Abtew II*, 808 F.3d at 899-900; *Abramyan v. U.S. Dep't of Homeland Sec.*, 6 F. Supp. 3d 57, 59, 65-66 (D.D.C. 2013); *Anguimate v. U.S. Dep't of Homeland Sec.*, 918 F. Supp. 2d 13, 18-19, 21-22 (D.D.C. 2013); *Gosen v. U.S. Citizenship & Immigr. Servs.*, 118 F. Supp. 3d 232, 243-44 (D.D.C. 2015); *Bayala v. U.S. Dep't of Homeland Sec.*, 264 F. Supp. 3d 165, 173-77 (D.D.C. 2017). DHS withheld Ms. Gatore's Assessment, citing Exemption 5.

In 2015, Ms. Gatore, several other requesters, and Catholic Charities (collectively, plaintiffs) filed a class action complaint against DHS. They alleged that DHS violated FOIA by adopting a policy of withholding Assessments to Refer in full without first determining whether any of their contents were nonexempt and could reasonably be segregated from deliberative portions exempt from disclosure. Plaintiffs sought to represent a class of all FOIA requestors who, since March 30, 2009, had requested or would request "the Assessment of their asylum officer, but were provided no portion of the Assessment." Compl. ¶ 65 (J.A. 39). They asserted a right to disclosure of the reasonably segregable nonexempt portions of each class member's Assessment, as well as an order declaring that the Department's alleged policy violated FOIA and enjoining DHS from withholding reasonably segregable material in the future.

The district court initially held the motion for class certification in abeyance. It then rigorously probed DHS's claim of exemption. The court denied DHS's motion for summary judgment and plaintiffs' cross-motion for partial summary judgment. And it ordered the Department "to submit a revised *Vaughn* index, affidavit, or declaration, that reassesses the issue of segregability as to each of the individual plaintiffs' assessments, and provides an adequate description of each assessment to support the defendant's assertion that no portion may be released." *Gatore v. U.S. Dep't of Homeland Sec.*, 177 F. Supp. 3d 46, 53 (D.D.C. 2016).

2

Between March and June 2017, the Department released to each named plaintiff a limited factual portion of their Assessment. Plaintiffs believed that DHS continued to withhold additional nonexempt information. Once the Department had made supplemental submissions and renewed its motion for summary judgment, the court ordered DHS to submit the plaintiffs' Assessments for *in camera* review, *Gatore v. U.S. Dep't of Homeland Sec.*, 292 F. Supp. 3d 486, 488, 494-95 (D.D.C. 2018), which it did, *Gatore v. U.S. Dep't of Homeland Sec.*, 327 F. Supp. 3d 76, 85 (D.D.C. 2018). Upon reviewing the Assessments *in camera*, the court denied the Department's summary judgment motion. *Id.* at 87-89, 104-05. The court held that "Catholic Charities has identified sufficient evidence for a reasonable factfinder to conclude that the defendant has a policy or practice of never providing any part of an assessment and not even attempting to determine if assessments contain reasonably segregable material." *Id.* at 105.

The district court also *sua sponte* granted summary judgment for the individual plaintiffs as to their requests for the reasonably segregable portions of their Assessments. Having reviewed the plaintiffs' Assessments *in camera*, the court held that "a number of factual introductory paragraphs in each assessment do not qualify for protection under Exemption 5," but were not disclosed; those paragraphs were "not 'inextricably intertwined with exempt portions,' and as such are reasonably segregable and must be produced." *Id.* at 88-89 (quoting *Wilderness Soc'y v. U.S. Dep't of Interior*, 344 F. Supp. 2d 1, 18 (D.D.C. 2004)).

The district court then denied class certification under Rule 23(b)(2) on the ground that plaintiffs sought to represent a class to which the court thought they no longer belonged. *Id.* at 103. DHS had given the individual plaintiffs between one and three paragraphs of their Assessments between March and June 2017. *Id.* Deeming that disclosure inadequate, the court ordered DHS to provide the named plaintiffs all segregable factual portions of their Assessments. *Id.* at 89. But because DHS had already given each plaintiff a few paragraphs of his or her Assessment in 2017, the court reasoned, the plaintiffs fell outside of the class of requestors who had received "no portion" of their Assessments. *Id.* at 103 (quoting Am. Compl. ¶ 65). In the alternative, despite the court's recognition of a triable policy-or-practice claim and of DHS's persistent failure to disclose all nonexempt portions of plaintiffs' Assessments, it held that the individual plaintiffs lacked standing to represent the class because the individual plaintiffs had no *other* pending FOIA requests and no concrete plans to make *future* FOIA requests. *Id.* at 103-04.

Plaintiffs moved to amend the complaint to add named plaintiffs and again sought class certification—this time under Rule 23(b)(3)—on behalf of a class of asylum applicants who had requested their Assessments under FOIA "but were not given the factual portions thereof." Pls.' Mot. Class Certification at 11 (J.A. 1774); *see id.* at 1, 9-11 (J.A. 1764, 1772-74). Two months after plaintiffs moved to amend their complaint, DHS released factual portions of the Assessments to the proposed new named plaintiffs. DHS also pointed out that it had amended its FOIA policy "in order to ensure that [it] process[es] assessments to refer in a manner consistent with recent federal court cases." Eggleston Decl. ¶ 27 (J.A. 1537). The Department issued new guidance instructing its FOIA processors to "[r]elease the factual information" in Assessments upon request. *Id.* attach. 18 (J.A. 1579); *see also id.* ¶¶ 27-31 (J.A. 1537-38). DHS opposed class certification, arguing that both the policy-or-practice and individual claims for disclosure were moot. Catholic Charities ultimately stipulated to the dismissal of its claims with prejudice in November 2020, but

3

individual plaintiffs pressed on.

At a telephonic hearing on plaintiffs' motion for class certification under Rule 23(b)(3), the district court denied the motion, holding that "the requirements of class certification have not been satisfied." Hr'g Tr. 7:24-25, Apr. 20, 2021 (J.A. 2012). Following that hearing, the district court entered an order to "show cause in writing as to why the Court should not dismiss the plaintiffs' Amended Complaint . . . as moot, in light of the Court's oral rulings." May 4, 2021 Order at 1 (J.A. 2020). Plaintiffs responded that, "aside from" pending motions for fees and costs, "the amended complaint is moot and should be dismissed by the Court." Pls. Resp. at 1 (J.A. 2021). The district court then entered an order dismissing the plaintiffs' Amended Complaint as moot. Plaintiffs timely appealed.

* * *

The only issue on appeal is whether the district court erred in denying class certification under Rule 23(b)(3). It is commonly said that "Rule 23(b)(3) class actions are money damages class actions." 2 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 4:47 (6th ed.). Rule 23(b)(3) authorizes class adjudication on behalf of less cohesive groups than does Rule 23(b)(2) and therefore offers "greater procedural protections." *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011). It requires findings that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy," FED. R. CIV. P. 23(b)(3), as well as notice to class members of any certification decision, FED. R. CIV. P. 23(c)(2)(B). None of those procedural protections are mandated when a district court certifies a Rule 23(b)(2) class. FED. R. CIV. P. 23(b)(2), (c)(2)(A); *see also Wal-Mart*, 564 U.S. at 362.

We note at the outset the potential mismatch between plaintiffs' underlying claims and their pursuit of class certification under Rule 23(b)(3). This is not a suit for damages, nor have plaintiffs identified any basis for seeking damages. From the outset plaintiffs have sought injunctive relief against DHS's generally applicable policy, making Rule 23(b)(2) the more natural route to class certification. *See Wal-Mart*, 564 U.S. at 361-62 (explaining that "[t]he key to the (b)(2) class" is that "a single injunction or declaratory judgment would provide relief to each member of the class"). Indeed, as noted above, plaintiffs had sought class certification under Rule 23(b)(2), but in a 2018 opinion the district court denied that motion. *Gatore*, 327 F. Supp. 3d at 103. The court reasoned that, once DHS gave named plaintiffs even a fraction of the nonexempt information, those plaintiffs could no longer represent class members subject to the same challenged policy who had received nothing. *Id*. Whatever the merit of the district court's Rule 23(b)(2) decision, plaintiffs do not challenge it on appeal, and we have no occasion to review it.

After the district court declined to certify the class under Rule 23(b)(2), plaintiffs changed horses and sought certification under Rule 23(b)(3). In 2021, after further proceedings, the district court denied that motion, too. By then the named plaintiffs had received all the segregable portions of their Assessments, and DHS had announced its abandonment of the challenged policy in favor of a policy of releasing to FOIA requesters all nonexempt, reasonably segregable portions of Assessments to Refer. DHS represented to this court that the agency was "firmly committed to

4

not reverting to the previous policy" and stated that "DHS is giving this court its word that it is not going to revert to the previous policy." Oral Arg. at 19:27-35, 20:29-35.

In declining to certify a Rule 23(b)(3) class, the district court concluded that, under "the situation as it now exists," "the requirements of class certification have not been satisfied." Hr'g Tr. 7:22-25 (J.A. 2012). Plaintiffs did not argue the voluntary cessation exemption to mootness or preserve any claim to the contrary; indeed, they affirmatively forfeited it in their filing in response to the district court's Order to Show Cause, where they categorically conceded the mootness of their claims. The undisputed mootness of plaintiffs' claims is alone sufficient to dispose of their Rule 23(b)(3) challenge.

Plaintiffs' principal argument on appeal is that class certification under Rule 23(b)(3) is warranted to ensure class-wide notice to absent members of the proposed class, but that argument cannot rescue plaintiffs' forfeited bid for class treatment. Plaintiffs assert that the district court erred in failing to consider that Rule 23(b)(3)'s notice requirement would entail communicating DHS's policy change to past FOIA requesters in the proposed class who "do not know they have been unfairly treated." Appellants' Br. at 2; *see id*. at 20, 49-51; Reply Br. at 1, 27-28. That argument confuses a class action procedure for a remedy. Rule 23(b)(3) certification is not justified by the potential utility of class-wide notice. Rather, the rule authorizes certification only when its requisites—including predominance and superiority—are met.

The district court ruled against plaintiffs for failure to satisfy those requisites, and plaintiffs have not shown that was error. If plaintiffs' broad concession of mootness were not alone fatal, plaintiffs also fall short of establishing predominance and superiority. The core issue common to the class was DHS's policy of failing to segregate and disclose to plaintiffs the nonexempt portions of Assessments to Refer to which FOIA entitled them. That issue cannot be said to predominate now that the government has discontinued the challenged policy. As to superiority, plaintiffs offer no meaningful explanation apart from their notice argument why litigating the new policy's correct application to absent class members on a class-wide basis would be superior to addressing such enforcement claims individually.

To be sure, the district court could have ruled on class certification before DHS changed its policy. Where an unlawful policy or practice is challenged on behalf of a group of similarly situated individuals, we doubt the general propriety of courts withholding certification until the defendant abandons the policy and then relying on lack of predominance to deny class certification. *See* FED. R. CIV. P. 23(c)(1)(A) ("At an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action."). Here, however, plaintiffs have not claimed that the timing or sequence of the district court's rulings affected their ability to establish predominance or superiority.

For these reasons, we affirm the district court's judgment.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or rehearing *en banc*. *See* FED. R. APP. P. 41(b); D.C. CIR. R. 41(a)(1).

**Per Curiam**

                        **FOR THE COURT:**
                        Mark J. Langer, Clerk

BY:    /s/
           Daniel J. Reidy
           Deputy Clerk