**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-2942
_____

UNITED STATES OF AMERICA

v.

NICOLE K. SCHUSTER,
                    Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:23-cr-00406-001)
District Judge: Honorable Paul S. Diamond
_____

Argued July 8, 2025

Before: KRAUSE, MATEY, and SCIRICA, *Circuit Judges*

(Opinion filed: March 23, 2026)

Brett G. Sweitzer     **[ARGUED]**
Federal Community Defender Office
for the Eastern District of Pennsylvania
601 Walnut Street

The Curtis Center, Suite 540 West
Philadelphia, PA 19106

     *Counsel for Appellant*

Louis D. Lappen    **[ARGUED]**
David Metcalf
Robert A. Zauzmer
Office of United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106

     *Counsel for Appellee*

—————————

OPINION OF THE COURT
—————————

KRAUSE, *Circuit Judge*.

While plea agreements serve many salutary ends, they also run the risk that a defendant might plead guilty to conduct that does not, in fact, satisfy the elements of an offense. For this reason, Federal Rule of Criminal Procedure 11(b)(3) requires courts to carefully scrutinize the factual basis for a plea before entering judgment to ensure that those facts are sufficient to support a conviction.

Here, the parties assumed that Appellant Nicole Schuster's disclosure of information submitted as part of a past

procurement violated the statutory prohibition under 41 U.S.C. § 2102(a)(1) (the Procurement Integrity Act (PIA)) of disclosing confidential bid information "before the award of a Federal agency procurement to which the information relates" because the past procurement was for a product that was "virtually identical" to that sought in a pending procurement. Schuster did not object to this interpretation. But § 2102(a)(1) may only be violated by the disclosure of information that was either submitted as part of a pending procurement or that is the same in substance to such information, and Schuster's guilty plea does not contain any facts establishing that the information she disclosed satisfied either of these criteria. Because the District Court had an independent obligation under Rule 11(b)(3) to interpret § 2102(a)(1) and determine whether the factual basis for the plea as set forth in the record constituted a crime, and there was not a sufficient factual basis here, the District Court plainly erred in accepting Schuster's plea.

## I.    **Background**

In 2017, Schuster, then a mechanical engineer working at the Naval Foundry and Propeller Center in Philadelphia, was made project lead on the Navy's procurement of a vertical turning center (VTC)—a large, specialized machine used to manufacture submarine propellers—that was referred to as the SU22. Four companies submitted competitive bids for the SU22, including two companies referred to in the District Court filings as "Company 1" and "Company 2." Each bid contained confidential information including cost and pricing data and proprietary information about manufacturing processes. During the pre-bid process, Schuster favored Company 1 and relied on its proposal when drafting the

3

technical specifications for the SU22.[1]  Because the other three bids did not meet these specifications, they were all deemed "technically unacceptable" and the SU22 contract was awarded to Company 1.  Ans. Br. 7.

Two years later, in 2019, the Navy decided to procure another VTC, this time called the SU25.  Again, Schuster was made project lead.  Favoring Company 1 for this award as well, Schuster asked her superiors to make the SU25 a sole-source contract to ensure that it would receive the contract.  Instead, the Navy decided to accept competitive bids from other companies while indicating its tentative plan to again award the contract to Company 1.  Several companies, including Company 2, bid for the SU25, submitting information that included technical specifications and pricing data.

When Schuster discovered that Company 2 had bid for the SU25, she expressed outrage to her co-workers, explaining that the SU25 contract was "not for" Company 2 and that "if [Company 2] [messes] up this contract, I will ruin them." Ans. Br. 9.  The following week, she sent a WhatsApp message to an employee at Company 1 stating that "[l]oyalty is important to me.  [Company 1] has mine.  And Company 2 pissed me off with this situation." *Id*.  Schuster attached to this WhatsApp message a copy of Company 2's confidential bid information from the SU22 procurement.  After receiving this information, Company 1 submitted its own bid for the SU25,

---

[1] This favoritism—which is not itself unlawful—appears to have been the result of both Schuster's view that other companies would not be able to produce a functional VTC, and her desire to curry favor with Company 1 in hopes of securing employment there in the future.

and, because Company 2's bid price was higher than Company 1's, the Navy determined that Company 2's bid was "outside of the Competitive Range" and awarded the SU25 contract to Company 1. J.A. 36.

Once Schuster's disclosure came to light, she was charged with violating 41 U.S.C. §§ 2102(a) and 2105(a).[2] Section 2102(a) prohibits federal agency employees from "disclos[ing] contractor bid or proposal information or source selection information before the award of a Federal agency procurement contract to which the information relates."[3] 41 U.S.C. § 2102(a). Section 2105(a) makes such disclosure a criminal offense if done in exchange "for anything of value or to obtain or give a person a competitive advantage in the award

_____

[2] Schuster was initially charged with violating a repealed predecessor statute, 41 U.S.C. §§ 423(a), (e)(1)(B), and when the Government realized its error, it filed a superseding information charging her under the current statute.

[3] The statute defines "contractor bid or proposal information" to include (1) "[c]ost or pricing data," (2) "[i]ndirect costs and direct labor rates," (3) certain "[p]roprietary information about manufacturing processes, operations, or techniques," and (4) "[i]nformation marked by a contractor as 'contractor bid or proposal information'" under applicable law, that was submitted to a Federal agency "as part of, or in connection with" a Federal agency procurement and "previously has not been made available to the public or disclosed publicly." 41 U.S.C. § 2101(2). "Source selection information" is defined by § 2101(7). The parties do not dispute that the SU22 information Schuster disclosed constitutes "contractor bid or proposal information," which we will refer to as "Bid Information."

5

of a Federal agency procurement." *Id.* § 2105(a). Schuster pled guilty pursuant to a plea agreement prepared by the Government that set out an advisory Guidelines range of 0-6 months' imprisonment and that included an appellate waiver. The plea memorandum, which set forth the factual basis for the guilty plea and was incorporated by reference at the guilty plea hearing, described Schuster's conduct in disclosing Company 2's SU22 Bid Information. It included the following description of the disclosed information:

> The documents that the defendant provided to Person 1 were marked "SOURCE SELECTION INFORMATION," "OFFICIAL USE ONLY," and "[Company 2] Proprietary information." The documents comprised approximately 31 pages and included cost and pricing data; proprietary information about manufacturing processes and techniques; bid prices submitted in response to federal agency solicitation for sealed bids; and proposed costs and prices submitted in response to a federal agency solicitation. The information provided by the defendant to Person 1 was confidential and not available to the public.

J.A. 35. The plea memorandum also described the SU22 and SU25 VTCs as "virtually identical" machines and detailed Schuster's communications regarding her preference for Company 1 and decision to disclose Company 2's SU22 Bid Information. J.A. 25, 34. None of the facts to which Schuster stipulated provided any further detail about the disclosed Bid Information, its similarity to the Bid Information submitted by

6

Company 2 as part of its bid for the SU25 procurement, or its relationship to the SU25 procurement.

At her plea colloquy, Schuster acknowledged that she understood the elements of the offense and stipulated to the factual basis set forth in the plea agreement. On that basis, the District Court concluded "that the government would be able to prove each of the essential elements of the offense" and accepted Schuster's guilty plea. J.A. 79-80.

At sentencing, the Court noted that, while the plea agreement stipulated a 0-6 months' sentence, that stipulation was based on the Guidelines applicable to the repealed predecessor statute under which Schuster had initially been charged. As the Court observed, the advisory Guidelines range for a violation of § 2102(a) is 6-12 months' imprisonment. Nonetheless, the parties continued to advocate for a 0-6 months' sentence. Schuster emphasized that she did not know that disclosure of information from "an old, out-of-date contract" was unlawful, Op. Br. 18; J.A. 103, and the Government pointed out that, despite Schuster's attempt to curry favor with Company 1, her conduct did not result in the Navy receiving an inferior machine or a bad deal. The Government therefore recommended a sentence of probation. The District Court, assuming that Schuster's conduct constituted a violation of § 2102(a), expressed its view that she had thereby "betrayed the Navy, [] betrayed the armed forces, [] and betrayed the government." J.A. 118-19. It then sentenced her to one year and one day in prison. Schuster, represented by new counsel, filed this timely appeal.

## II. Jurisdiction and Standard of Review

The District Court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction under 28 U.S.C. § 1291. Because Schuster challenges the sufficiency of the plea agreement's factual basis for the first time on appeal, we review for plain error.[4] *United States v. Scott*, 14 F.4th 190, 194 (3d Cir. 2021). Thus, Schuster must demonstrate that (1) the District Court erred; (2) that error was plain; and (3) the error affected her substantial rights by affecting the outcome of the proceedings. *Johnson v. United States*, 520 U.S. 461, 467 (1997). If these elements are met, we have discretion to award relief if "the defendant is actually innocent," *United States v.*

---

[4] The Government initially moved to dismiss Schuster's appeal, pursuant to its standard appellate waiver in her plea agreement, but it withdrew that motion once Schuster clarified that she was challenging the factual basis for her plea and seeking to withdraw it on that basis. *See United States v. Yung*, 37 F.4th 70, 82 (3d Cir. 2022) (observing that a defendant's purported "waive[r] [of] his right to appeal a conviction for acts that are not a crime" would constitute "executive branch . . . intru[sion] upon the legislature's power" and will not be enforced by the courts); *United States v. Castro*, 704 F.3d 125, 137-38 (3d Cir. 2013) (noting that, where the record is devoid of evidence of factual guilt, enforcing "an appellate waiver . . . grounded on a claim of insufficiency of evidence [would] amount[] to a miscarriage of justice"); *United States v. Wilson*, 429 F.3d 455, 458 (3d Cir. 2005) (acknowledging that "it would constitute a miscarriage of justice to enforce a guilty plea made pursuant to a plea agreement if the defendant should have been permitted to withdraw" his plea).

*Olano*, 507 U.S. 725, 736 (1993), or if the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings," *id.* (alteration in original) (quoting *United States v. Atkinson*, 297 U.S. 157, 160 (1936)).

## III.    Discussion

On appeal, Schuster argues that the District Court erred in accepting her guilty plea under Rule 11(b)(3) because disclosing Bid Information from an already-awarded procurement does not violate § 2102(a), meaning the guilty plea relied on an insufficient factual basis.  We first address whether the District Court erred in its interpretation of § 2102(a) before considering whether the other requirements for plain error have been met.

### A.    The Proper Interpretation of § 2102

Section 2102 of the PIA prohibits the knowing disclosure of "contractor bid or proposal information or source selection information before the award of a Federal agency procurement contract to which the information relates." 41 U.S.C. § 2102(a)(1).   And § 2105(a) makes it a criminal offense to disclose such Bid Information to "give a person a competitive advantage in the award of a Federal agency procurement contract."[5]  *Id.* § 2105(a).  But disclosure of Bid Information only violates § 2102(a) if it occurs before the award of a procurement "to which the information relates." *Id.* So how do we interpret the phrase, "to which the information

---

[5] Schuster also does not dispute that she disclosed the Bid Information to Company 1 to give it an advantage in the SU25 procurement.

9

relates"? According to the Government, "relates" has a broad meaning such that disclosed Bid Information need only be "related to" a pending procurement for its disclosure to violate § 2102(a). Ans. Br. 26-28. Schuster, on the other hand, urges a narrower reading under which the disclosed Bid Information must have been submitted as part of a pending procurement or be "exactly the same" as such information. Op. Br. 11-12 (quoting *Abacus Tech. Corp. v. United States*, 164 Fed. Cl. 199, 221 (2023)). In our view, neither interpretation accords with the text or structure of § 2102(a), or relevant case law. Instead, as explained below, the text and structure of § 2102(a), along with relevant caselaw, make clear that in order for disclosure of information submitted as part of a past procurement to violate § 2102(a), that information must be the same in substance as information submitted as part of a pending procurement, though it need not be identical. In other words, the past Bid Information must have the potential to convey in substance the same information as would disclosure of Bid Information submitted as part of the pending procurement.

We begin with the text of § 2102(a), which, notably, requires that the defendant disclose the Bid Information before the procurement award "to which the information relates," 41 U.S.C. § 2102(a)(1), not that the Bid Information simply be "related to" a pending procurement. "[R]elated to" is a passive adjectival phrase that indicates a general or unspecified relationship between two objects, even where those objects do not directly concern one another.[6] *See Cal. Div. of Lab.*

---

[6] Colloquially, for example, one might say that two biographies of William Shakespeare are "related to" one another by virtue

*Standards Enf't v. Dillingham Const., N.A., Inc.*, 519 U.S. 316, 335 (1997) (Scalia, J., concurring) ("[A]s many a curbstone philosopher has observed, everything is related to everything else."). By contrast, "to which the information relates" is an active verb clause indicating that a specific subject—the Bid Information—actively relates to a specific referent—a pending procurement. We must construe the word "relates" in context, not "in a vacuum," *Gundy v. United States*, 588 U.S. 128, 141 (2019) (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989)), and just as writing a statute in the "[p]assive voice pulls the actor off the stage," *Bartenwerfer v. Buckley*, 598 U.S. 69, 75 (2023), the use of an active verb places the actor center stage—here, focusing our attention on the particular procurement to which disclosed Bid Information actually relates.

In interpreting the legal effect of a particular phrase, we may also look to how that phrase or similar language is commonly used in statutes and judicial opinions. *See Wooden v. United States*, 595 U.S. 360, 367-68 (2022). Other statutes routinely use the term, "relates," to indicate that one thing directly refers to or concerns another. Often this is done to distinguish a particular thing—the one to which something else relates—from others. *See, e.g.*, 15 U.S.C. §§ 1667f(b)(1), (4) ("relates" indicates a direct connection between particular disclosure forms and a "transaction" or "disclosure requirements"); 15 U.S.C. § 1665d(b) ("relates" links a particular "omission or violation" with a "fee or charge"); 26 U.S.C. § 401(a)(39)(E)(iii) ("relates" connects a long-term care "premium statement" and "the specific coverage product"

---

of their shared subject matter, even if neither book directly references the other.

11

detailed in the statement); 26 U.S.C. § 6103(k)(8)(A)(iii) ("relates" links "unpaid liability" on a government payment to the corresponding "type of tax and tax period").

We have used similar language in our judicial decisions to convey this same sort of direct relationship between two things. *See, e.g.*, *Twp. of Tinicum v. U.S. Dep't of Transp.*, 582 F.3d 482, 487 n.1 (3d Cir. 2009) (denoting the specific "commercial flight to which a tax relates, the tax's 'subject flight' (because that flight is the subject of the tax)"). So have other courts. *See, e.g.*, *King v. Newbold*, 845 F.3d 866, 868 (7th Cir. 2017) (describing a Rule 54(b) motion "filed more than thirty days after the entry of the [specific] adjudication to which it relates" (citation modified)); *Abtew v. U.S. Dep't of Homeland Sec.*, 808 F.3d 895, 898 (D.C. Cir. 2015) ("A document is predecisional if it precedes, in temporal sequence, the [specific agency decision or policy] to which it relates." (citation modified) (quoting *Senate of the Commonwealth of P.R. v. Dep't of Justice*, 823 F.2d 574, 585 (D.C. Cir. 1987))); *United States v. Neary* (*In re Armstrong*), 206 F.3d 465, 473 (5th Cir. 2000) (explaining that a trustee can only raise a compulsory counterclaim while the particular "claim to which it relates is still in issue"); *Anderson v. U.S. Dep't of Health & Hum. Servs.*, 3 F.3d 1383, 1385 (10th Cir. 1993) (noting that a party cannot appeal a discovery order until the specific "proceeding to which it relates is concluded by a final, appealable decision").

This narrower reading of the phrase "to which the information relates" also finds support in § 2102(a)(1)'s requirement that the disclosure come *before* the award of a contract. That temporal limitation on liability would be seriously undermined by the Government's proposed reading

12

of § 2102(a). After all, federal agencies often solicit procurement bids for the same or similar products and services year after year.[7] In such scenarios, on the Government's reading—which would have us focus on the similarity, not between the *information* submitted in connection with the past and pending procurements, but between the *products solicited*—any information submitted in connection with the past contract could be viewed as "related to" the pending one, blurring any distinction between information disclosed before and after the pending contract and sweeping both within the scope of a § 2102(a) violation. In short, the Government's reading "eviscerates any distinction between *pre-* and *post-*award of a contract—a distinction [§ 2102(a)] clearly contemplates—thereby rendering the statutory language 'before the award' meaningless." *Am. Small Bus. League v. Dep't of Def.*, 372 F. Supp. 3d 1018, 1026 (N.D. Cal. 2019).

Finally, this narrower reading aligns with the decisions of every court that has interpreted § 2102(a). *See Abacus*, 164 Fed. Cl. at 221 (disclosure of information that "related only to" a prior procurement would not violate § 2102(a)); *SAGAM Securite Senegal v. United States*, 154 Fed. Cl. 653, 663 (2021) ("Simply put, according to these provisions, a procurement official may not disclose one bidder's competition-sensitive proposal features, as enumerated in section 2101(2), to a competing bidder in an ongoing procurement."); *Insight Pub. Sector, Inc. v. United States*, 157 Fed. Cl. 416, 429 (2021) (disclosing information that is

---

[7] *See, e.g.*, *Mitchco Int'l, Inc. v. United States*, 26 F.4th 1373, 1375-76 (Fed. Cir. 2022) (food and dining room services); *Abacus Tech. Corp. v. United States*, 164 Fed. Cl. 199, 204-05 (2023) (network operations support services).

"directly related to, and occurred prior to" the award of a contract would violate § 2102(a)); *United States v. Kuciapinski*, 434 F. Supp. 3d 939, 950 (D. Colo. 2020) ("The Court agrees in the general sense that one cannot violate § 2102, and therefore cannot conspire to violate it, if the 'conspiracy' relates to information about an already-awarded contract."). We therefore reject the Government's broad reading of the statute.

At the same time, we find Schuster's interpretation too narrow. Schuster points us to *Abacus*, 164 Fed. Cl. at 221, where the Court of Federal Claims found that disclosed information from a past procurement did not relate to a pending procurement after noting that the plaintiff "ha[d] not argued that [the defendant] used exactly the same labor categories in its proposal" for the pending procurement. *Id*. But *Abacus* did not hold that the information needed to be word-for-word identical to constitute a violation of § 2102(a); it simply explained why the plaintiff in that case had failed to allege that the past Bid Information disclosed was the same as the information submitted for the pending procurement. Indeed, it would be difficult to imagine how labor categories from an incumbent project could be related to an unawarded contract, absent use of identical categories.

For the foregoing reasons, the text and structure of § 2102(a), along with relevant caselaw, make clear that in order for disclosure of information submitted as part of a past procurement to violate § 2102, that information must be the same in substance as information submitted as part of a pending procurement.

14

## B.     The District Court's Error Was Plain

To determine whether there is a factual basis for a plea, a court may consider all the evidence in the record at the time of judgment. *United States v. Cefaratti*, 221 F.3d 502, 509 (3d Cir. 2000).  Here, the plea memorandum reflects that the information Schuster disclosed was from Company 2's bid for the SU22 procurement in 2017, not its bid for the SU25 procurement in 2019.  And while the plea memorandum describes the *subjects* of the procurements as "virtually identical," J.A. 34, it does not describe the Bid Information that Company 2 *submitted* in connection with the SU22 bid—i.e., the information—as being the same in substance as the Bid Information it submitted for the SU25 procurement.  Thus, the plea agreement lacked a sufficient factual basis to support a conviction, and the District Court's acceptance of Schuster's guilty plea was, in these circumstances, error.

Because we are reviewing for plain error, it is not enough that the District Court erred; the error must also have been plain, meaning "clear or obvious." *Puckett v. United States*, 556 U.S. 129, 135 (2009).  An error "need not be clear or obvious under a 'perfectly analogous case,' or even under the case law of the circuit" to be plain. *Scott*, 14 F.4th at 198 (quoting *United States v. Irvin*, 369 F.3d 284, 290 (3d Cir. 2004)) (citation modified).  It suffices that "there are out-of-circuit decisions sufficiently on-point." *Id.* (citation modified).  Text alone may also suffice to show plain error, if sufficiently clear. *See United States v. Dickerson*, 381 F.3d 251, 260 (3d Cir. 2004) ("[W]e are convinced that the error was 'plain,' given the clarity of the statutory language . . . .").  *But see United States v. Jabateh*, 974 F.3d 281, 299 (3d Cir. 2020) (holding that text alone cannot establish plain

15

error if "only a close interpretative inquiry reveals the best reading" of the text). Here, however, the text, structure, common usage, and all available precedent point clearly to the same interpretation of § 2102(a): that the disclosed information, submitted as part of a past procurement, be the same in substance as information submitted as part of a pending procurement. It was therefore plain error for the District Court to adopt the Government's far broader interpretation and to accept a plea that lacked the requisite factual basis.[8]

The Government's arguments that there was no error are not persuasive. First, the Government notes that the plea memorandum describes the SU22 and SU25 VTCs as "virtually identical" machines, J.A. 34, and asserts that the similarity between the end products of the two procurements sufficed for a factual basis on which the court could find that Company 2's detailed, proprietary information concerning the SU22 bid "related" to the Bid Information for the SU25. Yet

---

[8] Our dissenting colleague would conclude that this error is not plain. *See* Dissenting Op. 1 (citing *United States v. Jabateh*, 974 F.3d 281, 299 (3d Cir. 2020)). But our analysis here is a far cry from the "close interpretative inquiry" required in *Jabateh*. 974 F.3d at 299. The interpretive question in that case required extensive supplemental briefing; no court had ever addressed the question; and the opinion relied extensively on legislative history and other sources beyond the plain text, structure, and precedent. *Id*. at 291-97, 299-300 & n.19. Here, in contrast, our interpretation of § 2102(a) is "dictated by common sense and basic principles of statutory interpretation," making the District Court's error plain. *United States v. Dickerson*, 381 F.3d 251, 258-60 (3d Cir. 2004).

16

the similarity of the requested products tells us nothing about the similarity, if any, between the Bid Information submitted by Company 2 for those two products. After all, the very nature of a competitive bid process assumes that different bidders will offer different ways to produce an identical product. It may be that Company 2 submitted the same information for both bids. But the opposite seems more likely—that Company 2, having lost the SU22 bid, made significant changes in hopes of improving its chances of winning the SU25 bid. Indeed, the plea agreement itself supports the latter hypothesis, as Company 2's SU22 bid was rejected as "technically unacceptable," J.A. 33, but its SU25 bid was not; instead, it was rejected for being "outside of the Competitive Range," meaning too expensive. J.A. 36. That seems to indicate that the technical components of Company 2's SU25 bid were materially different than those in its SU22 bid. In addition, the price of the awarded SU25 contract was over forty percent greater than that of the SU22 contract, suggesting that Company 2's SU22 cost and pricing data were outdated, if not irrelevant, by the time of the SU25 procurement.

The Government next contends that we may infer a high degree of similarity in the two sets of Bid Information from the simple fact that Schuster disclosed the earlier one. She would not have done so, the argument goes, unless the SU22 Bid Information were similar enough to give Company 1 a competitive advantage in the SU25 procurement. Again, however, there are no facts to support that inference. Whether the disclosed information relates to the SU25 procurement is an objective question, meaning Schuster's subjective beliefs about the information in making the decision to disclose are immaterial. *See* § 2102(a). Similarly, while the plea

17

memorandum includes the conclusory statement that Company 1 submitted its SU25 bid "with the competitive advantage of having Company 2's proprietary information," J.A. 35, there are no facts to support that conclusion, which would only be relevant, in any event, to whether Schuster would be subject to criminal liability under § 2105(a), not whether her disclosure violated § 2102(a) in the first place. Conferring a competitive advantage is neither sufficient nor necessary to violate § 2102(a).[9] A company might, for example, gain a competitive advantage from the disclosure of information from a completely unrelated bid simply by virtue of the window into a competitor's business, but such disclosure would not violate § 2102(a). And the fact that a disclosure was made to confer a competitive advantage is what converts a § 2102(a) violation from a civil to a criminal matter, which makes clear that this aggravating factor is not necessary to establish a § 2102(a) violation.

Finally, the Government urges that, when reviewing a challenge to the sufficiency of a guilty plea's factual basis, our standard of review should be the same as for a challenge to the sufficiency of the evidence submitted at trial. Specifically, it contends that we must affirm unless, "after viewing the evidence in the light most favorable to the prosecution," we determine that no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Ans. Br. 19 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319

---

[9] Whether information has the capacity to confer a competitive advantage remains relevant to whether that information is proprietary, *see Abacus*, 164 Fed. Cl. at 221-22, as well as whether its disclosure may trigger criminal penalties, *see* 41 U.S.C. § 2105(a).

(1979)).  We are not persuaded that the same standard applies here.  When a court determines whether there is sufficient factual basis for a guilty plea, it need not be "convinced beyond a reasonable doubt tha[t] an accused is guilty.  It need only be convinced that there is sufficient evidence to justify the reaching of such a conclusion."  *Cefaratti*, 221 F.3d at 509 (alteration in original) (quoting *United States v. Alber,* 56 F.3d 1106, 1110 (9th Cir.1995)).  Thus, our review is likewise limited to whether the facts admitted to in connection with the guilty plea, taken as true, are legally sufficient to support a conviction.

To be sure, the government is entitled to reasonable inferences in its favor.  *See United States v. Avalos-Sanchez*, 975 F.3d 436, 441 (5th Cir. 2020).  But to be reasonable, inferences must be supported by facts; mere speculation is insufficient.  *Cf. Allen v. Ollie's Bargain Outlet, Inc.*, 37 F.4th 890, 896-98 (3d Cir. 2022); *United States v. Silveus*, 542 F.3d 993, 1004 (3d Cir. 2008); *United States v. Myers*, 308 F.3d 251, 260 (3d Cir. 2002).  Here, in the absence of facts supporting a reasonable inference that the disclosed Bid Information concerning the SU22 was the same in substance to the Bid Information Company 2 submitted as part of the SU25 procurement, we could only rely on speculation to find the factual basis sufficient.

For the reasons we have explained, we are constrained to find that the District Court's error in accepting Schuster's guilty plea without a sufficient factual basis meets the standard for plain error.  *See Puckett*, 556 U.S. at 135.

19

**C.    The Error Affected Schuster's Substantial Rights**

To obtain relief, Schuster must also show that the error affected her substantial rights by affecting the outcome of the proceedings.  *See Johnson*, 520 U.S. at 467.  There is some disagreement among our sister circuits as to what is required to satisfy this standard in the context of a Rule 11(b)(3) challenge to the sufficiency of a guilty plea's factual basis.  Several circuits apply the standard set forth by the Supreme Court in *United States v. Dominguez Benitez* that a defendant "must show a reasonable probability that, but for the error, he would not have entered the plea."  542 U.S. 74, 83 (2004).[10]  The Tenth Circuit, in contrast, has held that a defendant need only show that "the record as a whole fails to provide a sufficient factual basis to support the guilty plea."  *United States v. Carillo*, 860 F.3d 1293, 1301 (10th Cir. 2017).

We need not take a side in this circuit split, however, because Schuster prevails even applying the more stringent standard in *Dominguez Benitez*.[11]  Under that standard, to

---

[10] *See, e.g.*, *United States v. Bryant*, 976 F.3d 165, 173-74 (2d Cir. 2020) (holding that defendant "must show a reasonable probability that, but for the error, he would not have entered the plea" (citation modified)); *United States v. Castro-Trevino*, 464 F.3d 536, 540-41 (5th Cir. 2006) (same); *United States v. Monzon*, 429 F.3d 1268, 1271-72 (9th Cir. 2005) (same).

[11] We recognize that the Rule 11(c)(3) error at issue in *United States v. Dominguez Benitez*, 543 U.S. 74 (2004) differs in an important respect from the Rule 11(b)(3) error at issue here.  A defendant who pleaded guilty despite a court failing to inform them of the consequences of entering a plea under Rule

determine whether there is a reasonable probability that, but for the District Court's error, Schuster would not have pled guilty, we consider "any record evidence tending to show that a misunderstanding was inconsequential to a defendant's decision, or evidence indicating the relative significance of other facts that may have borne on his choice regardless of any Rule 11 error." *Dominguez Benitez*, 542 U.S. at 84. We also consider "the overall strength of the Government's case and any possible defenses that appear from the record." *Id.* at 85. Finally, we must bear in mind that "[t]he reasonable-probability standard is not the same as, and should not be confused with, a requirement that a defendant prove by a preponderance of the evidence that but for error things would have been different." *Id*. at 83 n.9.

That standard is met where, as here, the record contains no other facts to suggest that the defendant actually committed the crime with which they were charged. *See United States v. Garcia-Paulin*, 627 F.3d 127, 133-34 (5th Cir. 2010); *United States v. Garcia*, 587 F.3d 509, 520-21 (2d Cir. 2009). Had the District Court realized that the factual basis was insufficient and required the Government to provide additional details, those details may have demonstrated that the disclosed information was in fact the same or substantially similar to the information Company 2 submitted as part of its SU25 bid. But they may also have revealed that the opposite was true. In the

---

11(c)(3) might have entered that plea even if the error had been corrected. In contrast, correcting a Rule 11(b)(3) error would have required the District Court to reject the guilty plea for a lack of factual basis before it was even entered, meaning the defendant necessarily would not have entered the plea but for the error.

21

latter case, Schuster's conduct would not have constituted a crime, so there is more than a reasonable probability that she would not have pleaded guilty. At a minimum, requiring the Government to provide actual facts, rather than rely on assumptions, would have allowed Schuster to evaluate the strength of the Government's case and assess whether she might have had a viable defense at trial.

The Government protests that any error was inconsequential because it would have been able to establish that the information Schuster disclosed was "the same or substantially similar" to Company 2's SU25 Bid Information. Ans. Br. 40-41. Perhaps that is so, but such evidence is nowhere in the record before us. The Government also asserts that Schuster might have nonetheless agreed to plead guilty to § 2102(a) to avoid facing other charges. Again, perhaps so, but it does not matter if a defendant's hypothetical choice to go to trial would "have been foolish." *Dominguez Benitez*, 542 U.S. at 85. What matters is that there is a reasonable probability that they would have made that choice. *Id*. That standard is met here.

Finally, it is well established that entering a judgment of conviction without a sufficient factual basis is an error that seriously affects the fairness, integrity, or public reputation of judicial proceedings. *See Garcia-Paulin*, 627 F.3d at 134; *Garcia*, 587 F.3d at 521; *United States v. Monzon*, 429 F.3d 1268, 1274 (9th Cir. 2005). Thus, all the requirements to show plain error have been met, and we will exercise our discretion to grant Schuster relief.

22

### D. The Proper Remedy Is Vacatur and Remand for Repleading

The parties dispute the proper remedy in the event we find that Schuster's challenge satisfied plain error review. Schuster argues that we should vacate with instructions to the District Court to enter judgment of acquittal. She reasons that, because the Fifth Amendment's Double Jeopardy Clause would preclude retrial of a defendant where the evidence at trial was later deemed legally insufficient, the same rule should apply where the factual basis for a guilty plea is deemed insufficient. No other Court of Appeals has taken that approach, however, and all to date agree that the proper remedy is vacatur and a remand for repleading. *See, e.g.*, *United States v. Smith*, 997 F.3d 215, 219-25 (5th Cir. 2021); *Garcia*, 587 F.3d at 518-21; *United States v. Maye*, 582 F.3d 622, 630-31, 634 (6th Cir. 2009); *Monzon*, 429 F.3d at 1272-74.

We agree with the weight of authority. Jeopardy is successive, and thus barred, where a conviction is reversed for insufficient evidence following a trial. *See Burks v. United States*, 437 U.S. 1, 10-11 (1978). But where a conviction is reversed for mere trial error, jeopardy is continuing, so there is no double jeopardy, *see Lockhart v. Nelson*, 488 U.S. 33, 38 (1988), and a district court's failure to reject a guilty plea without a sufficient factual basis is a form of trial error, *see United States v. Rea*, 300 F.3d 952, 957-59 (8th Cir. 2002); *United States v. Green*, 139 F.3d 1002, 1004-05 (4th Cir. 1998).

The differences between a guilty verdict and a District Court's evaluation of a guilty plea under Rule 11(b)(3) explain why that particular trial error does not implicate the Double

23

Jeopardy Clause. At trial, the Government is expected to present its entire case and must carry its burden to prove each element of an offense beyond a reasonable doubt. *See Burks*, 437 U.S. at 16. At a change of plea hearing, in contrast, the Government need not present its full case and may instead rely on facts to which a defendant has admitted. *See Rea*, 300 F.3d at 958-59. A determination that the evidence submitted at trial was insufficient means no reasonable jury could find the defendant guilty on the basis of that evidence, requiring acquittal. But where a court concludes only that the factual basis for a plea is insufficient under Rule 11(b)(3), it has made no determination about whether the defendant could be found guilty at trial with the benefit of other evidence the Government would marshal if given the opportunity. This is why Rule 11(b)(3) directs courts to reject a plea with an insufficient factual basis, rather than enter a judgment of acquittal.

Because the District Court's error in accepting Schuster's plea was trial error and thus does not implicate the Double Jeopardy Clause, we decline Schuster's invitation to enter an acquittal and will instead follow our sister circuits' practice of vacating and remanding for repleading.

## IV.   Conclusion

For the foregoing reasons, we will vacate Schuster's conviction and sentence and will remand for repleading.

MATEY, *Circuit Judge*, dissenting.

The United States botched this prosecution not once, but twice, wasting scarce public resources and delaying the timely application of our criminal laws. And if the error Schuster appealed was plain, I would join the majority's careful (and correct) opinion construing 41 U.S.C. § 2102(a). As the majority concludes, Congress used the term "to which the information relates" to describe the relationship "between the *information* submitted in connection with the past and pending procurements" not "between the *products solicited*." Maj. Op. 13. For reasons unknown, neither the written plea agreement nor the prosecutor's proffer explained the similarity of the information in the SU22 and SU25 bids. That error, which could have been avoided with the addition or utterance of a few words, runs afoul of Congress's command.

But I do not think that error plain and do not see that it affects Schuster's substantial rights. *See Johnson v. United States*, 520 U.S. 461, 466–67 (1997). The majority commendably employs the customary tools of construction, drawing on Congress's nuanced choice of the "active verb clause," "to which the information relates," rather than the "passive adjectival phrase," "related to"; a host of statutes and judicial opinions that use the word "relates"; and the many recurring agency solicitations for procurement bids that would conflict with the government's interpretation. Maj. Op. 9–14. But the need for this "close interpretative inquiry" to discern the best reading of § 2102(a) makes the error, by definition, not plain. *United States v. Jabateh*, 974 F.3d 281, 299 (3d Cir. 2020). And even though the government omitted the similarity between the bids in the plea agreement and allocution, the record contains facts demonstrating Schuster committed the acts prohibited by § 2102(a). Schuster sent to Company 1 "cost

1

and pricing data; proprietary information about manufacturing processes and techniques; [and] bid prices" for Company 2's bid on a machine "virtually identical" to the SU25. App. 34–35. She did so while pledging her "[l]oyalty" to Company 1, vowing to "ruin" Company 2 for bidding on the SU25, and stating that Company 2 "pissed [her] off" when it bid. App. 35. All support an inference that the Bid Information relates to the SU25 bid, leaving no "reasonable probability that, but for the error, [Schuster] would not have entered the plea." *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004). So I would affirm Schuster's conviction.

Let me reiterate where the blame for the error rests. Certainly not the District Court who ably labored through the prosecution's first fumble, charging a statute that had been repealed more than a decade earlier, *see* Act of Jan. 4, 2011, Pub. L. No. 111-350 § 7(b), 124 Stat. 3860, and its second, recommending a sentence based on an incorrect Guideline range. No, the mischief of this matter begins and ends with the United States Attorney's Office. Even with its other errors, a few simple strokes on the keyboard connecting the two bids— as the prosecution finally did in this appeal—would have avoided months of delay. Thinly drafted pleas invite danger, and the small effort of detailing the factual basis for a crime is a basic function of our federal criminal process. Particularly when dealing with a seldom charged statute, as here.

So while I do not see plain error, I agree with the salutary effect of the majority's decision, demanding diligence in future prosecutions, consistent with the obligations of the Department of Justice.

2